JEFFREY A. TURNOY, OSB 12481
MARK C. COGAN, OSB 92016
1500 SW FIRST AVENUE, SUITE 780
PORTLAND, OR 97201
503-827-8092
email: mark@coganlawoffice.com
ATTORNEYS FOR DEFENDANT

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:14-CR-00282-KI-1 |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SENTENCING |
| vs. | ) | MEMORANDUM |
| | ) | |
| TUNG WING HO, | ) | |
| Defendant. | ) | |

This matter is pending for imposition of sentence on November 10, 2015. The purpose of this pleading is to summarize the reasons we intend to present in favor of imposing a sentence of no jail time, consistent with the considerations in 18 U.S.C. § 3553(a).

A.    INTRODUCTION

Mr. Ho was charged by Indictment and pleaded guilty to a single count of the crime of Conspiracy to Transport, Receive, and Sell Stolen Goods. He remains out of custody on this matter, and awaits imposition of sentence.

B.    ADVISORY SENTENCING GUIDELINES BASE CALCULATIONS

We do not dispute the benchmark advisory Sentencing Guidelines calculations which are reflected in the Pre-Sentence Report. Indeed, the advisory Sentencing Guidelines do reference a Base Offense Level of 6. See U.S. SENTENCING GUIDELINES MANUAL §§ 2X1.1, 2B1.1(a)(2). There is no dispute that a 14-level increase applies, as the amount of loss was greater than $550,000 but less than $1,500,000. See id. at § 2B1.1(b)(1)(H). Further, there is no dispute that a

**DEFENDANT'S SENTENCING MEMORANDUM                                    PAGE 1**

3-level decrease applies for acceptance of responsibility. See id. at § 3E1.1(b). Thus, the advisory guideline range is level 17, which prescribes an advisory sentence of 24 to 30 months.

C.    DEPARTURES AND CRIMINAL HISTORY CALCULATION

Based on Mr. Ho' acceptance of responsibility, there is no dispute that Mr. Ho qualifies for a 3-level reduction for Acceptance of Responsibility, resulting in an adjusted offense level of 17 from 20. See id. Further, in light of Mr. Ho's waiver of motions, additional discovery, acceptance of responsibility for the full scope for the fraud, and his cooperation in the investigation, the government is recommending a 4-level downward variance. This variance places Mr. Ho at level 13, which prescribes an advisory sentence of 12 to 18 months. Nor is there any dispute that Mr. Ho has a criminal history category I, as he has no prior criminal history.

D.    RECOMMENDED SENTENCE

The Probation Department is seeking imposition of a sentence of one year and one day in prison, followed by 3 years of supervised release. The government has agreed not to seek a prison sentence any higher than the low-end of the applicable guideline range, and will recommend a sentence of one year and one day in prison. The plea agreement, and the law, do not require the Court to impose such a severe sentence. Further, there is no mandatory minimum sentence applicable to this case. The defense urges the Court to impose a lesser sentence, based on the following considerations.

E.    SENTENCING CONSIDERATIONS

Before going into the specific reasons calling for imposition of a sentence below the advisory Sentencing Guidelines range, it is important to make some general observations. The advisory Sentencing Guidelines are *ab initio* the product not solely of careful analysis and consideration of empirical data, but they are also the consequence of political guessing. The

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 2**

crude methodology used to create the sentencing guidelines was one of simple arithmetic averaging and addition; the Sentencing Commission simply took the average national sentences for a given offense, and then increased the incarceration term, without explanation, much less scientific studies. See U.S. v. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005).

This methodology is painfully deficient as an intellectual exercise, and has the effect of compressing the varied actions of individuals and their attendant circumstances. In other words, the effect of averaging raises the floor for those whose criminality is relatively minimal and reduces the ceiling for those whose criminality is relatively greater. Combine this averaging with the wide variance associated with certain types of offenses, e.g. quantity defined drug offenses, and you have a further disassociation of considerations of the offender and the punishment imposed.

Mr. Ho is 37 years of age. Under the recommendations of the Probation Department and the government, Mr. Ho will be 38 years old when released. The outlook for a 38 year-old felon, just released from prison, poses an interesting dichotomy– because of his age, he is less likely to re-offend, as recidivism rates decline relatively consistently as age increases[1] (good), but his incarceration severely damages his prospects for social re-integration (bad)[2]. Most male inmates do not leave prison transformed into law-abiding citizens, but rather, the very skills an inmate

_____

[1] UNITED STATES SENTENCING COMMISSION, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 12, 28 (2004), http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal_History.pdf.

[2] Testimony of Pat Nolan, Vice President of Prison Fellowship to The Joint Economic Committee of the U.S. Congress "Mass Incarceration in the United States: At What Cost?"  October 4, 2007.

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 3**

develops to survive inside prison make him anti-social when released. An unintended consequence of incarceration to be sure, but not easily ignored.

Perhaps, given the unscientific nature of the formulation of the Sentencing Guidelines, the physician's credo *primum non nocere* ("Above all, do no harm"), may offer some perspective. This simple phrase  reminds the physician that s/he must consider the possible harm that any intervention might do. It is invoked when debating the use of an intervention that carries an obvious risk of harm but a less certain chance of benefit. Historically, this phrase has been for physicians a hallowed expression of hope, intention, humility, and recognition that human acts with good intentions may have unwanted consequences.

F.      GROUNDS FOR ADDITIONAL DOWNWARD ADJUSTMENT OF SENTENCE

Pursuant to 18 U.S.C. § 3553(a), the Court is required to "impose a sentence sufficient, but not greater than necessary," to advance the sentencing policies and objectives which are provided by law. The sentencing criteria include the need to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The plea agreement authorizes Mr. Ho to request additional downward adjustments of his sentence, beyond those to which the government has stipulated and the Probation Department has recommended. We urge the Court to adjust the sentence downward based on a combination of factors, including the sentencing policies which are established in 18 U.S.C. § 3553(a).

**DEFENDANT'S SENTENCING MEMORANDUM**                                    **PAGE 4**

**1. The Advisory Guideline is too Harsh, Excessive, or is "Greater than Necessary," and the Purpose of Sentencing is Satisfied by a Sentence Below the Guidelines**

Too many people go to too many prisons for far too long for no good law enforcement reason. It is time to ask ourselves some fundamental questions about our criminal justice system. Statutes passed by legislatures that mandate sentences, irrespective of the unique facts of an individual case, too often bear no relation to the conduct at issue, breed disrespect for the system, and are ultimately counterproductive. It is time to examine our systems and determine what truly works.

Eric Holder, U.S. Att'y Gen, Address at the 15th Annual National Action Network Convention (Apr. 04, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130404.html.

United States Supreme Court Justice Anthony Kennedy has stated on several occasions that the guidelines are too harsh, sentences too long, the guidelines should be revised downward, and the fact that there is a lobby for higher penalties is "sick". <u>See</u> Anthony Kennedy, U.S. Supreme Court J., *Judicial Security and Independence*, C-SPAN (Feb. 14, 2007), http://www.c-spanvideo.org/program/196657-1; Anthony Kennedy, U.S. Supreme Court J., Address at the Ninth Circuit Judicial Conference (July 09, 2006), *available at* http://www.talkleft.com/story/2006/07/11/842/04331/inmatesandprisons/Justice-Kennedy-Calls-Efforts-to-Increase-Sentences-Sick-; Anthony Kennedy, U.S. Supreme Court J., Address at the ABA Annual Conference (Aug. 09, 2003), *available at* http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/; <u>see also</u> <u>Kimbrough v. U.S.</u>, 552 U.S. 85, 111 (2007) (district court's below guideline sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals" of sentencing.);

**DEFENDANT'S SENTENCING MEMORANDUM                    PAGE 5**

U.S. v. Germosen,  473 F. Supp. 2d 221, 227 n.11 (D.Mass. 2007) ("While before the Guidelines nearly 50% of federal defendants were sentenced to probation, *see* Bureau of Justice Statistics Sourcebook 1994, table 5.27, USSC Annual Report, table B-7 (providing rates of imprisonment from 1984-1989), afterwards it was only 15%. U.S.S.C.1996 Sourcebook of Federal Sentencing Statistics, 20.")); see also Timothy Williams, *Police Leaders Join Call to Cut Prison Rosters*, N.Y. TIMES, Oct. 20, 2015, http://www.nytimes.com/2015/10/21/us/police-leaders-join-call-to-cut-prison-rosters.html?emc= edit_th_20151021&nl=todaysheadlines&nlid=26951077&_r=1 (More than 130 law enforcement officials, including top police chiefs and district attorneys, have formed a group called Law Enforcement Leaders to Reduce Crime and Incarceration to call upon Congress and State and local governments to implement programs and laws to reduce the massive amount of persons incarcerated throughout the United States. The group's aim is to use programs, rather than incarceration, to handle offenses involving minor drug possession, theft, and other low-level offenses where treatment and/or crisis management benefits the community more than jail and prison sentences.).

The advisory guideline in this case calls for a sentence of between 12 and 18 months in prison. The government and the Probation Department are recommending a sentence of one year and one day. As such, pursuant to the guidelines and the recommendations, Mr. Ho is at risk of going to prison. The defense submits that any amount of prison time is overly harsh, excessive, and "greater than necessary" to achieve the purposes of sentencing.

Imprisonment would not reasonably accomplish any of the legitimate sentencing objectives, as Mr. Ho does not present a risk of engaging in similar conduct in the future, he is

**DEFENDANT'S SENTENCING MEMORANDUM**                                 **PAGE 6**

not a danger to society, he appropriately understands the nature of his misdeeds, he has fulfilled

his money judgment, and he has already engaged in substantial community service work to try to

make up for what he has done. Imprisonment would only accomplish an objective of retributive

punishment. Further, there are alternative sanctions which would equally punish Mr. Ho. Thus, a

departure is warranted.

    2. **This is Mr. Ho's First Conviction and He is Unlikely to Reoffend**

    A downward-departure or variance from the applicable sentencing guideline is

appropriate when the defendant has no criminal history whatsoever. See U.S. v. Paul, 561 F.3d

970, 973 (9th Cir. 2009); U.S. v. Autery, 555 F.3d 864, 874 (9th Cir. 2009); U.S. v. Huckins, 529

F.3d 1312, 1319-1320 (10th Cir. 2008); see U.S. v. Tomko, 562 F.3d 558, 571-72 (3d Cir. 2009)

(where defendant was convicted of tax evasion of $225,000 and guidelines were 12 to 18

months, court's sentence to probation on condition of one year home detention and fine of

$250,000 not unreasonable in part because of the defendant's minimal criminal record.). The

likelihood that the defendant will engage in future criminal conduct is a central factor that district

courts must assess when imposing a sentence. Pepper v. U.S., 131 S. Ct. 1229, 1242 (2011). In

addition, a defendant's age and reduced risk of recidivism are grounds for low-end and below

guideline sentences. See U.S. v. Smith, 275 F.App'x 184, 186 (4th Cir. 2008) (in child

pornography case where guideline sentence was between 78 and 97 months, downward departure

to 24 months warranted due to the defendant's advanced age, having avoided violations of law

until 64 years of age, and the absence of any risk of recidivism).

    As stated above, and confirmed by the Probation Department, Mr. Ho has no criminal

history points. As the instant matter is Mr. Ho' first conviction, the fact that Mr. Ho is a first-time

offender who is 37 years old makes the prospect of re-offending slim. The statistics and relevant

data demonstrate that a person who is unfamiliar with the criminal justice system, and who has

zero criminal history points, even as opposed to one criminal history point, poses the least

amount of risk of recidivism. See U.S. SENTENCING COMM'N, RECIDIVISM AND THE "FIRST

OFFENDER" 17 (2004).

Further, although Mr. Ho is by no-means of advanced age or elderly, the fact that he is

nearing 40 years of age makes him less likely to reoffend. Mr. Ho is towards the outside of the

"prime" years for committing criminal offenses. The statistics show that a defendant in their 20s

and 30s is more likely to reoffend than a defendant in their 40s, 50s, and beyond. UNITED STATES

SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE

FEDERAL SENTENCING GUIDELINES, at 12, 28 (2004),

http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal

_History.pdf. Moreover, Mr. Ho is a new father, is on track to be married to his long-time fiancé,

and has stable employment. All of these factors militate towards a minimal risk of re-offending.

Given the extremely minimal risk that Mr. Ho will ever reoffend, a departure from the

applicable guideline range and from the recommendations of the government and Probation

Department is warranted.

### 3. Incarceration is Not Necessary to Protect the Public, and Probation with Conditions is Sufficient Punishment

Where a defendant is very unlikely to reoffend, poses no danger to the public, and a

probation sentence is sufficient to deter, a departure from prison to probation may be appropriate.

See U.S. v. Hein 463 F. Supp. 2d 940, 943 (E.D. Wis. 2006) (where defendant convicted of being

**DEFENDANT'S SENTENCING MEMORANDUM**                                    **PAGE 8**

felon in possession of ammunition, the guideline term of 12 to 18 months was "greater than necessary to satisfy the purposes of sentencing" in part because "given his minimal prior record and law-abiding life for the past ten years, coupled with his diminished physical capacity, [the court] found that defendant was very unlikely to re-offend and posed no danger to the public. Therefore, prison was not necessary."); U.S. v. Edwards, 595 F.3d 1004, 1016, 1016 n.9 (9th Cir. 2010) (where defendant convicted of bankruptcy fraud and on probation for prior state conviction for fraud and where guidelines range 27-33 months, sentence of probation seven months of which was to be served under house arrest, and $5,000 fine, and restitution of $100,000 not abuse of discretion in part because "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration," and citing legislative history: "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose. S. Rep. No. 98-225, at 92."); U.S. v. Baker, 502 F.3d 465, 468 (6th Cir. 2007) (in possession of unregistered firearm case where firearm accidentally discharged and guidelines range of 27 to 33 months, a below-guideline sentence of probation with one year of house arrest reasonable in part because incarceration was not necessary to protect the public).

Probation and the conditions that come with probation are onerous in their own right. Such has been recognized by the United States Supreme Court. See Gall v. U.S., 552 U.S. 38, 48 (2007) (a sentence of probation is "a substantial restriction of freedom....[and although]...custodial sentences are qualitatively more severe than probationary sentences of equivalent terms[,] [o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.... Probationers may not leave the judicial

**DEFENDANT'S SENTENCING MEMORANDUM** **PAGE 9**

district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.... Most probationers are also subject to individual 'special conditions' imposed by the court.").

Probation sentences can come with periods of home confinement, community service, fines, and warnings to keep out of trouble, all of which have been done when a prison sentence was prescribed by the guidelines. See U.S. v. Munoz-Nava, 524 F.3d 1137, 1149 (10th Cir. 2008) (in drug case where guidelines 47 to 56 months, district court's sentence of one year and a day in prison and one year home detention reasonable in part because "home confinement and supervised release substantially restrict the liberty of a defendant."); see generally, U.S.v. Prosperi, No. 10-1739, 2012 WL 2866243 (1st Cir. July 13, 2012) (Defendants' sentences of six months of home monitoring, three years of probation, and 1,000 hours of community service for mail fraud was substantively reasonable, even though they were an 87-month variance from the bottom of the applicable guidelines range); Tomko, 562 F.3d at 571 (district court did not abuse its discretion in sentencing defendant to probation with a year of home detention, community service, restitution, and fine for tax evasion, rather than to term of imprisonment where guidelines range of 12 to 18 months); Autery, 555 F.3d at 876 (where defendant convicted of possession of child pornography and where guidelines 41 to 51 months, court's sua sponte variance to probation not unreasonable in part because in light of district court's stern warning of maximum sentence to follow any violation, it was "improbable that the district court's stern warning will be an ineffective deterrent in this case.").

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 10**

Mr. Ho has never been in trouble with the law, and will very likely never be in trouble ever again. However, as a result of this prosecution, Mr. Ho will be a felon for the rest of his life, which by itself has lasting consequences. See U.S. v. Smith, 683 F.2d 1236, 1240 n.13 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."). A probationary sentence adequately promotes respect for the law, and is an onerous punishment. As is evident from the above caselaw, if sentenced to probation, Mr. Ho's freedom, even though not confined by prison walls, will be significantly restricted. Mr. Ho will be subject to supervision and restrictions to ensure that he does not reoffend during his probationary period. During the time prior to being charged in this matter, as well as his time being supervised by Pretrial Release Services, which has lasted approximately 20 months combined, Mr. Ho has had no issues complying with the conditions placed on him or otherwise staying out of trouble, he has passed all random urinalyses, and has been overwhelmingly compliant. There can be little doubt that the cooperation and compliance that Mr. Ho has exhibited during the 20 months since this case began will continue during any term of probation or supervision imposed. See U.S. v. Johnson, 588 F. Supp. 2d 997, 1004 (S.D. Iowa 2008) (in child pornography case where there was a three-year delay between the seizure of defendant's computer and the indictment, and guideline range of 121 to 151 months, sentence of 84 months imposed in part due to the defendant's good behavior during the lengthy delay between seizure and indictment).

Further, as conditions of probation, there are alternatives to incarceration that would be equally punitive and onerous, such as home confinement. Sentencing Mr. Ho to house arrest in lieu of prison would allow him to help in the rearing and care for his infant daughter. House arrest would also allow Mr. Ho to continue working, which is a circumstance that is favored by

**DEFENDANT'S SENTENCING MEMORANDUM**                          **PAGE 11**

Probation Officers around the country. House arrest is an onerous punishment in its own right as it is a substantial restriction on one's freedom. See U.S. v. Bueno, 549 F.3d 1176, 1182 (8th Cir. 2008) (affirming downward-departure sentence of five years probation with house arrest from 108-135 months, based in part on defendant's role as the primary caregiver of his infirm wife, and the fact that defendant would be subject to house arrest for the entire probationary period); see also U.S. v. Coughlin, 2008 WL 313099, at *5 (W.D. Ark. Feb. 1, 2008) (in embezzlement and tax evasion case with guideline sentence of 33 to 41 months, sentence of probation with 27 months home confinement imposed due to the severity and retributive nature of the punishment).

In addition, there are provisions in the sentencing guidelines that substitute prison time for community or home confinement. See U.S. SENTENCING GUIDELINES MANUAL § 5C1.1 (d)(2). Mr. Ho falls under Zone C of the sentencing guidelines with a criminal history category I and crime seriousness level 13, prescribing an advisory sentence of 12 to 18 months in prison. Under §5C1.1(d)(2), if Mr. Ho were to serve a guideline sentence, once Mr. Ho has served half of his sentence in prison, he would be eligible for community or home confinement for the remainder of the incarceration part of his sentence. Although the defense is advocating for a sentence that is less than what is being recommended by the government and Probation Department, specifically a sentence of probation and no prison time, if Mr. Ho is given a sentence of one year and one day in prison, or another sentence that places Mr. Ho in Zone C of the guidelines, the defense urges that Mr. Ho should receive a period of home confinement once half of the sentence is served in prison.

Therefore, a departure from the guidelines and the recommendations is warranted, as probation with conditions is an appropriate and just punishment, and home confinement is a

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 12**

viable and sufficiently punitive alternative to incarceration.

### 4. The Loss Guideline Places Inordinate Emphasis on the Amount of Loss

The loss guideline places a heavy emphasis on the amount of loss without explaining why it is appropriate to accord such weight to loss as opposed to other factors. Given this circumstance, courts have found occasion to depart downward based on the guidelines' extraordinary emphasis on loss. See U.S. v. Adelson, 441 F. Supp. 2d 506, 507, 509 (S.D. N.Y. 2006) (in securities fraud case, where government advocated for guideline level 55, which was effectively a sentence of 85 years to life, court's sentence of 42 months imposed due in part to the inordinate emphasis the guidelines place on loss); see also U.S. v. Emmenegger, 329 F. Supp. 2d 416, 427-28 (S.D. N.Y. 2004) (The specific amount of loss is often "a kind of accident" and thus "a relatively weak indicator of the moral seriousness of the offense or the need for deterrence." Most defendants do not set out to defraud a specific amount of money; rather, the amount of loss is dependent on the security procedures in place and the point in time when the ongoing fraud happens to be detected. "Had [the defendant] been caught sooner, he would have stolen less money; had he not been caught until later, he would surely have stolen more.").

In the present case, Mr. Ho's advisory guideline begins at level 6, and is adjusted upward by 14 levels due to the amount of loss being greater than $550,000 but less than $1,500,000. The upward adjustment for loss is more than double the base offense-level. As indicated above, one of the reasons that loss is a poor indicator of "moral seriousness" is because if Mr. Ho had been caught after a single transaction, or after 500 transactions, the loss would be less or greater, respectively. Had Mr. Ho been caught before any moneys had been gained, or small amounts had been gained, then his guideline level would likely place him in Zone A, calling for a straight

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 13**

probationary sentence. However, because the fraud continued for some time, more money was gained, thus causing the offense-level to drastically increase. Therefore, from the guidelines perspective, the amount of loss is the morality indicator, thus punishing people more severely depending on how much was taken.

It is not unreasonable to suggest that other factors weigh more heavily on the "moral seriousness" of a theft offense, such as who the victim was and their degree of vulnerability, whether there were multiple victims, how long the offense went on, whether any force or coercion was used in the taking, etc. While some of those factors are taken into account via the guidelines, amount of loss by far carries the greatest upward departure in offense-level. For instance, a theft offense involving more than 25 victims will increase the base offense-level by 6 levels, whereas an offense involving between $40,000 to $95,000 will earn the same 6-level increase. See U.S. SENTENCING GUIDELINES MANUAL §§ 2B1.1(b)(1)(D), (2)(C). Thus, under the guidelines, the amount of loss is more important than the number of victims, even for a relatively small-scale fraud.

Moreover, in Mr. Ho's situation, it is clear that, having voluntarily made financial remittances to the government and Nike which exceed the amount of the underlying profit, the use of the applicable loss calculation vastly exceeds Mr. Ho's moral culpability. Specifically, Mr. Ho has pleaded guilty to fraudulent theft of approximately $680,000, which was the total amount procured between Mr. Ho and co-defendant Kyle Yamaguchi. Of that amount, Mr. Ho's share was around 80 percent, which comes out to approximately $522,000. Mr. Ho, through his efforts in paying his money judgment to the government, the amount remitted to Nike, and the moneys and assets that were seized by law enforcement, Mr. Ho has paid in excess of the $522,000

**DEFENDANT'S SENTENCING MEMORANDUM**                                    **PAGE 14**

amount that was his share of the profits.

Mr. Ho has forfeited to the government $206,801, $27,750, and a Mercedes worth upwards of $150,000. He has paid the government $50,000 for his money judgment. He has also paid the victim, Nike, $111,333 of his own money and $203,881 from proceeds of the sale of his home in Portland. Overall, these payments and/or forfeitures come to almost $750,000, which far exceeds the amount of loss in this case, whether it be Mr. Ho's share or the total amount which includes the profits of co-defendant Yamaguchi.

Given that the amount of loss does not reflect the "moral seriousness" of the offense, particularly in a case such as this where the loss has been offset, and the fact that loss is over-emphasized in the guidelines, a downward departure from the guidelines and recommendations is warranted.

### 5. Mr. Ho's Valuable Cooperation should be Considered

Where a defendant aids the authorities in understanding how the crime was committed and accomplished, a departure may be warranted to reflect the defendant's cooperation. See U.S. v. Ruff, 535 F.3d 999, 1001 (9th Cir. 2008) (In embezzlement case where guidelines called for 30 to 37 months, sentence of one day in jail and one year and one day in community treatment center not unreasonable in part due to the defendant's willingness to admit his guilt and cooperate with federal agents as to how crime was accomplished.).

In the present case, Mr. Ho has fully cooperated with the authorities as to how the conspiracy worked. He explained his relationship with co-defendant Kyle Yamaguchi, and what steps were taken to hide the transactions within the company, how the payouts worked, and everything else about this conspiracy to which Mr. Ho has knowledge. Mr. Ho did not shy away

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 15**

from the investigators' questions, and he answered all questions as openly and honestly as he could. Mr. Ho also testified before the Grand Jury, admitting his own guilt and that of the co-defendants. Further, at all times, Mr. Ho has remained ready, willing, and able to aid Nike, the victim, in pursuing its civil litigation against Mr. Keating and preventing a fraud like this from happening ever again.

Given Mr. Ho's willingness to come clean about the offense and to help the authorities and Nike, a departure from the guidelines and recommendations is warranted.

### 6. Mr. Ho has Manifested "Super" Acceptance of Responsibility, has shown Extreme Remorse, and has made Post-Offense Restitution

Where early efforts are made at addressing the wrongs committed by the defendant, particularly in repaying unjust gains, a downward departure may be warranted to give credit for extraordinary acceptance of responsibility, beyond that which is taken into account by the guidelines. See U.S. v. Gardellini, 545 F.3d 1089, 1090, 1095 (D.C. Cir. 2008) (where defendant convicted of filing false income tax return, and guidelines 10 to 16 months, district court properly imposed sentence of probation in part because defendant "cooperated with authorities and accepted responsibility…to an extraordinary degree."); U.S. v. Kim, 364 F.3d 1235, 1244-45 (11th Cir. 2004) ($280,000 restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution; the defendants' conduct demonstrated their sincere remorse and acceptance of

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 16**

responsibility); <u>U.S. v. Milne</u>, 384 F. Supp. 2d 1309 (E.D. Wis.2005) (in bank fraud case, advisory guidelines range of 18 to 24 months after adjustment for acceptance and offense level did not fully account for defendant's voluntary reporting of his misconduct to bank and his significant early efforts to repay bank). Further, a District Court failing to take a defendant's positive actions and remorse into account in imposing a sentence has been grounds for remand on appeal. <u>See</u> <u>U.S. v. Paul</u>, 561 F.3d 970, 973 (9th Cir. 2009) (where defendant convicted of embezzlement and guidelines were 10 to 16 months, court's within guideline sentence of 15 months was unreasonably high in part because of defendant's showing of remorse).

In addition, where the defendant makes post-offense restitution, a departure from the guidelines is warranted in exceptional circumstances. <u>See</u> <u>U.S. v. Oligmueller</u>, 198 F.3d 669, 670-72 (8th Cir. 1999) (affirming downward departure in fraud case based on guidelines section 5K2.0 due to the extraordinary efforts made at restitution, which included repaying defrauded bank by preparing assets to obtain the highest return for bank, getting a new job, giving the bank half of the defendant's social security check each month, and giving up his home and living with family members).

In the present case, Mr. Ho has indeed made extraordinary efforts at restitution that manifest a "super" acceptance of responsibility, such that his case should be viewed outside of the heartland of cases, and a departure should be given for all the financial burdens Mr. Ho has undertaken to make more than full restitution to Nike.

Mr. Ho has paid Nike a total of $315,214.19 in restitution. $111,333.16 was from Mr. Ho's bank account, and the remaining $203,881.03 was from the proceeds from selling Mr. Ho and his fiance's home in Portland. In addition, Mr. Ho consented to the forfeiture of his

**DEFENDANT'S SENTENCING MEMORANDUM** **PAGE 17**

Mercedes, worth upwards of $150,000, as well as the cash seized from his home by law enforcement, which totaled more than $225,000. Moreover, as part of the plea agreement in this case, Mr. Ho was subject to a $50,000 money judgment to the government, which has been paid in full.

There can be no doubt that Mr. Ho has made extraordinary efforts to not only divest himself of his ill-gotten gains, but he has also made good on his financial obligations, and is making headway on his tax obligations, to be more fully explained below in section 7. Mr. Ho's home in Portland has been sold, as well as his condo in Hillsboro, he has moved in with his fiance's parents in San Francisco, California, has fulfilled the money judgment to the government, and has made full restitution to Nike, over and above what was financially lost to Nike as a result of Mr. Ho's conduct. Mr. Ho and his family have taken on these severe financial burdens not only to demonstrate Mr. Ho's acceptance of responsibility, but also because Mr. Ho is genuinely remorseful for what he has done. Mr. Ho has not only disgorged himself of all of his ill-gotten gains, but he has also divested himself of virtually all of his and his family's assets, even those that were purchased prior to the conduct involved in this case, which includes the Portland-area residences.

As such, due to the extraordinary efforts made by Mr. Ho to make restitution and manifest a "super" acceptance of responsibility, a departure beyond the recommendations of the government and the Probation Department is warranted.

### 7. Mr. Ho's Steps to Reconcile his Tax Liabilities should be Considered

Guidelines section 5K2.0(a)(1) permits this Court to depart from the applicable guideline range if the Court finds that there is a mitigating circumstance of a kind not adequately taken into

consideration by the Sentencing Commission in formulating the guidelines, and such circumstance should result in a sentence different than prescribed. In Mr. Ho's case, such a circumstance is the steps taken by Mr. Ho to reconcile his taxes related to his ill-gotten gains.

As a result of Mr. Ho's conduct in this case, Mr. Ho accrued hundreds of thousands of dollars which was not reported to the IRS. However, since October of 2014, Mr. Ho has made great progress to settle-up with the IRS, and create a plan to pay off his tax liabilities. Mr. Ho has worked with a forensic accountant and a CPA firm to help establish what exactly he owes, prepare the necessary documents, file them with the IRS, and then work with the IRS to pay back what is owed.

Mr. Ho amended his 2012 tax return to include $94,160 in ill-gotten gains. His 2013 return was filed, which included $452,660 of illegal income. As a result, Mr. Ho owes the IRS the sum of $226,141, and owes the State of Oregon an additional $67,404. It is noteworthy that all of the money and assets seized by the government, which includes over $225,000 in cash as well as a Mercedes worth more than $150,000, cannot be used to offset Mr. Ho's tax liabilities. Despite these circumstances, and the long-term financial hardships that will ensue, Mr. Ho voluntarily filed the amended returns as prepared by his accounting team, and has been making payments to begin to pay off what is owed. It is also worth noting that, since the beginning of this case, Mr. Ho has been keenly interested and concerned about his tax liabilities, and has never showed an unwillingness to begin the process of reconciling his taxes with the government.

Therefore, because Mr. Ho has been proactive in handling issues related to his taxes, and is actively taking steps to pay off the balance, that is a circumstances which should be taken into consideration in imposing a sentence in this case. Mr. Ho "gets it." From the very beginning, Mr.

**DEFENDANT'S SENTENCING MEMORANDUM**                                    **PAGE 19**

Ho has known that he would not only face possible prison time, but also very real and crippling financial penalties as a result of his conduct. Mr. Ho has never shied away from his financial obligations, and in fact, has always been keenly interested in making things right. Reconciling his taxes is only one of many circumstances that shows Mr. Ho's remorse and acceptance of responsibility; but it is an important circumstance, and one that Mr. Ho will face far longer than any prison sentence, whether that be within or below the guidelines range.

Further, it should be noted that Tiffany Couch, the forensic accountant who has worked with Mr. Ho to determine his tax-liabilities, was very complimentary of Mr. Ho and his willingness to not only accept responsibility, but also to be forthcoming with information and active in resolving these issues. Ms. Couch states:

> I do want to remark on my experience with Mr. Ho. I have been a forensic accountant, and involved in civil and criminal cases for more than 10 years; dealing with both victims and defendants. I have interviewed dozens of alleged white-collar criminals. I can attest to the fact that I have never had an experience with any of these defendants that is like the one I've had with Mr. Ho. He has shown true remorse, he has urged us to file his tax returns, knowing the personal and long-term ramifications of doing so, and shown a willingness to be engaged in the process. He has not once indicated that his current situation is anyone else's fault but his own. Very few of my interactions with white-collar criminals comes close to the interactions I've had with Mr. Ho.

As such, a departure is warranted under section 5K2.0 to adequately take into account Mr. Ho's tax liabilities and the actions he has taken to settle-up and begin to pay off what is owed to the government.

### 8. Mr. Ho's Community Service and Charitable Good Deeds Should be Considered

A defendant's exceptional community service work and charitable good deeds have been grounds for a downward departure from the guidelines. See Tomko, 562 F.3d at 572-75 (in tax

**DEFENDANT'S SENTENCING MEMORANDUM**         **PAGE 20**

evasion case where guidelines range was 12 to 18 months, court's sentence to probation with one

year of home detention was not unreasonable in part due to the defendant's charitable activities

and good deeds); U.S. v Thurston, 544 F.3d 22, 26 (1st Cir. 2008) (where defendant convicted of

medicare fraud of over five million dollars and guidelines capped at 60 months, district court's

sentence of 3-months affirmed where district judge cited, among other things, the defendant's

charitable good works, generosity with his time, and assistance to others).

      Since April of 2015, Mr. Ho has been extensively engaged in community service and

charitable work. Mr. Ho has provided his services to two entities in the San Francisco area; his

church (Christ for all Nations), and the Sunset Neighborhood Beacon Center (SNBC).

      For his church, Mr. Ho works every Saturday with their Food Pantry program, organizing

and providing food to more than 550 needy families in the area. Mr. Ho also helps as a translator

in the church community, particularly for elderly patrons who only speak Spanish or Chinese.

Mr. Ho has also donated his time to help patrons with home repairs. As of the writing of this

memorandum, Mr. Ho has volunteered more than 75 hours of his time to the church and its

patrons.

      For SNBC, Mr. Ho has volunteered his time for their summer and after-school programs.

Mr. Ho works with SNBC every Wednesday and Friday. Mr. Ho has been instrumental in a

number of ways; from helping move equipment from SNBC's office to the school, to creating

and implementing ideas and activities for the programs, to actively working with the more than

250 youth students who attend the programs. Mr. Ho has taken the children on field trips to

museums, conducted other educational activities, and spoken to the kids about making the right

and healthy choices for their future and lives. In addition, due to short staffing and limited

**DEFENDANT'S SENTENCING MEMORANDUM**          **PAGE 21**

resources, Mr. Ho has helped SNBC with data entry, translation and cleaning when needed, and has also helped to organize and participate in SNBC's Food Pantry program to provide food to the needy in the community. To date, Mr. Ho has given over 225 hours of his time to SNBC and its programs.

Since April of 2015, Mr. Ho has undertaken extensive and exhaustive efforts to benefit those in his community. He has completed more than 300 hours of community service to date, with two separate entities, all the while working and supporting his fiancé and infant child. The efforts of Mr. Ho are extraordinary, and are only expected to continue. Given these circumstances, a downward departure is warranted to reflect the vast community service work and charitable good deeds in which Mr. Ho has been so actively engaged.

### 9. Mr. Ho is a Law-Abiding Citizen who did a "Dumb Thing," used Bad Judgment, and Mr. Ho's Motive should be Considered

Where a defendant is an otherwise law-abiding citizen who did a dumb thing and used bad judgment, leniency and/or a departure may be warranted. See U.S. v. Hadash, 408 F.3d 1080, 1084 (8th Cir. 2005) (where defendant pled guilty to possession of stolen firearms, and guidelines 12 to 18 months, district court reasonably departed downward by six levels because the district court said the defendant was simply "a law abiding citizen, who [did] an incredibly dumb thing" and said that the defendant "was not the type of defendant the guidelines section was designed to punish.") (alteration in original); U.S. v. Kathman, 490 F.3d 520, 526 (6th Cir. 2007) (downward departure in involuntary manslaughter case appropriate in part because the defendant was an otherwise law-abiding citizen who made a bad mistake and used poor judgment); U.S. v. Howe, 543 F.3d 128, 133 (3d Cir. 2008) (downward departure in mail fraud

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 22**

case with loss of $150,000 not unreasonable given that the crime was an isolated mistake in the context of the defendant's entire life). The defendant's motive in committing the criminal offense is also an important factor in determining a sentence, and can be grounds for a downward departure. See Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993).

Other than the instant offense, Mr. Ho has lived a law-abiding life. Indeed, one member of the law-enforcement team involved in this case told us he does not consider Mr. Ho to be a bad person, but rather a good person who did some bad things. Mr. Ho has no criminal history, not a single criminal history point via the guidelines, and has conducted himself appropriately for decades into his adult life. Mr. Ho's conduct in this case constituted a gross deviation in behavior; not to be repeated. Mr. Ho is 37 years old, and has lived conviction-free until this incident.

Further, Mr. Ho holds no ill-will against Nike and did not engage in the instant scheme because he was unhappy with his job or wished to harm anyone. In fact, Mr. Ho was very happy with his job. Truthfully, there really is no good answer to the question of "why?" The instant offense was more opportunistic than greed or for recognition, and Mr. Ho acknowledges that he ruined his dream job for no good reason. Mr. Ho has struggled to understand his own conduct; without doubt, he has learned a very important lesson from all this.

In regards to Mr. Ho's motives, it also bears mention that Mr. Ho underwent a psychological evaluation with Dr. Linda Grounds, in order to assess why this all happened. Dr. Grounds reported the following as her opinion as to why Mr. Ho engaged in these unlawful behaviors:

*Given Mr. Ho's immersion in and devotion to both the sneakerhead culture and*

**DEFENDANT'S SENTENCING MEMORANDUM**                                    **PAGE 23**

> *the Nike brand it is, on the surface, both hard to understand his criminal conduct in the instant offense and easy to assume that his behavior was simply motivated by financial gain. However, and counter-intuitively, it is my opinion that, while his conduct certainly resulted in substantial financial gain for Mr. Ho, this was actually not a significant motivation for him. With respect to the behavior resulting in the current charges, it is my opinion that Mr. Ho's decisions and behavior in this matter are directly related to his very early (i.e., childhood and adolescent) fascination and subsequent immersion in the sneakerhead culture....[As to Mr. Ho starting the unlawful activity,] at some point he persuaded himself that providing what was at that time just one pair of sneakers from his own collection would bring pleasure to another sneakerhead <u>and</u> he obtained significant gratification from providing other sneakerheads with the highly coveted commodity of Nike sneakers.*

In her conclusions, Dr. Grounds states:

> *Mr. Ho <u>very clearly</u> now understands the thinking errors that went into his decision-making and conduct and feels deep humiliation, shame, and remorse for his behavior.*

> *Mr. Ho's judgment and behavior in this instant offense are in [sic] not typical for him. Mr. Ho appears to value and respect rules generally and to be motivated to follow rules and engage in proper behavior....He appears to be very motivated to take steps to take responsibility for his behavior, re-establish a prosocial personal and professional life and give back to the community in some way in an effort to make amends for previous mistakes. It is also my opinion that Mr. Ho would do well on supervised release into the community (as he has during his period of pretrial release) and that he represents a very low risk of recidivism.*

In addition, Mr. Ho's otherwise good character should be considered in determining whether a prison sentence is appropriate in this case. Along with this memorandum are four character letters which demonstrate that Mr. Ho used poor judgment in committing the fraud, but is an otherwise good person.

Raimol Cortado is the Enrichment Coordinator with SNBC, and he is aware of the instant predicament Mr. Ho finds himself in. Mr. Cortado notes that Mr. Ho has been very generous with his time to SNBC, and has been a role-model to many of the youths overseen by SNBC and its

**DEFENDANT'S SENTENCING MEMORANDUM**                                      **PAGE 24**

programs. Mr. Cortado writes that Mr. Ho has emphasized to the children the messages of working hard, giving respect, and making healthy choices in life. Mr. Ho is described as a "people's person," and has made himself available whenever called upon by SNBC staff. Mr Ho's expertise and insight on business practices have inspired Mr. Cortado regarding his own business practices. Mr. Cortado writes that Mr. Ho is a genuinely good person who is apologetic for his previous actions. Mr. Cortado states that "[s]omebody like him would have a bigger and positive impact on society if he were given another chance as seen in our After School Program and Summer Camp." Mr. Ho is a welcomed volunteer who SNBC would "love" to have continue in his volunteer work.

Tiffany Yee is Mr. Ho's "de facto" sister-in-law, and has known Mr. Ho for more than 10 years. She notes that upon this legal situation coming to light, Mr. Ho immediately accepted responsibility for his actions and has been working hard to make amends for what happened. Ms. Yee writes that Mr. Ho has engaged in volunteering, works for apparel company American Giant, and has been an instrumental and beneficial figure in the lives of the whole family, but particularly his infant daughter.

The Reverend Terrence Chan is a Pastor with the Christ for All Nations Lutheran Church in San Francisco, to which Mr. Ho is an attendee. Reverend Chan writes that Mr. Ho has shared with him the past transgressions against Nike, and the regret and sincere remorse which Mr. Ho has expressed. Mr. Ho fully acknowledges that he not only hurt Nike, but also himself and his family. However, Mr. Ho has used this incident as an opportunity to better himself, his family, and his community by helping out with various community service activities through the church, as well as providing a good example for the youth who participate. Reverend Chan concludes

**DEFENDANT'S SENTENCING MEMORANDUM**               **PAGE 25**

that Mr Ho "has tremendous potential to be a positive mentor for young people. I believe Mr. Ho is now a blessing to his community and family. I believe Mr. Ho has embraced this life changing experience and desires the outcome to have a positive effect on others."

Bayard Winthrop is the CEO of American Giant, Mr. Ho's current employer. Mr. Winthrop has taken Mr. Ho on as an employee in spite of the instant charges and the punishment which Mr. Ho faces. Mr. Winthrop notes that after a full discussion with Mr. Ho about his legal situation, Mr. Ho was hired due to his acceptance of responsibility, remorse, and commitment to moving forward. Mr. Ho expressed that his actions were his fault alone and no one else's, that he had a deep sense of guilt, but that this incident will not define Mr. Ho moving forward. Mr. Winthrop writes that Mr. Ho has exceeded his expectations, and the broader team at American Giant has overcome the initial concerns about having Mr. Ho on board, and views him as a member of the team as well. Mr. Winthrop expresses that "[i]t would be a blow to lose him both professionally and personally."

Mr. Ho understands and admits that he made a bad mistake and used very poor judgment in committing the instant offense. As a former employee with Nike, Mr. Ho knows that doing anything to detract from the brand is an incredibly "dumb thing," and will not go unnoticed. He knows that, and readily admits his bad conduct. However, given that this is Mr. Ho's first conviction, and a conviction that will follow him for the rest of his life, and the conduct at issue is not who Mr. Ho truly is or who he wants to be, as amply demonstrated through the submitted character letters, a sentence less than what is being recommended by the government and Probation Department is warranted.

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 26**

**10. Probation Office Recommends a Below-Guideline Sentence**

Where the Probation Department recommends a sentence below the applicable guidelines range, a departure is warranted to reflect such recommendation. See U.S. v. Willis, 479 F. Supp. 2d 927, 937 (E.D. Wisc. 2007) (where guidelines range 120 months, and 60-month statutory maximum, downward departure to one year and one day in prison reasonable in part because sentence consistent with the recommendation of the probation officer, whose view of the offense and the offender were taken into account); Hein, 463 F. Supp. 2d at 943 (in felon in possession of ammunition case, and guidelines 12 to 18 months, a sentence of probation was appropriate in part due to the recommendation of the probation officer, especially since a probation recommendation in the post-Booker era is "quite rare.").

The Probation Department is recommending a sentence of 12 months and one day in prison. That is a 4-level variance from the applicable sentencing guideline. U.S. Probation Officer Adam Jacobson provided a detailed explanation for the variance in the pre-sentence report. Probation Officer Jacobson took into account the seriousness of the offense, but also acknowledged Mr. Ho's limited criminal history, his positive action taken prior to sentencing, as well as his history of stable employment.

Although the defense agrees with the Probation Department that a sentence below the guidelines is totally appropriate, the defense disagrees that any prison-time is necessary or proper in this case. This is so primarily for all the reasons explained in the pre-sentence report which, according to Probation Officer Jacobson, warrant a below-guidelines sentence of 12 months and one day in prison. The fact that Mr. Ho has no criminal history, has fully accepted responsibility and cooperated with the government and Nike, has made pre-sentence restitution, and has a

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 27**

history of stable employment and positive contributions to the community, all weigh in favor of a sentence even below that which is recommended by the Probation Department. Mr. Ho has shown that he is capable of behaving appropriately and will be compliant with any conditions placed upon him while on supervision post-sentencing. The question is, is prison necessary for Mr. Ho to get the message? The answer is no. There are constraints and consequences that can be meted out by a probationary sentence that are onerous enough to promote respect for the law and to adequately punish Mr. Ho for his conduct. Any prison time would not serve any legitimate purpose other than retributive punishment, which is not necessary in this case, given all the positive steps taken by Mr. Ho since the instant offense occurred.

Therefore, given that the Probation Department is recommending a below-guideline sentence, and since Mr. Ho can be counted on to follow the rules, a sentence below that recommended by the government and Probation Department is warranted.

In addition, the defense objects to special condition #4 of the Pre-Sentence Report, to the extent of Mr. Ho not being permitted to have contact with former Nike employees. This provision encompasses Denise Yee, Mr. Ho's fiancé and mother of his child. Ms. Yee is a former Nike employee, and while Ms. Yee is not part of the instant litigation, she was a defendant in Nike's civil suit. Ms. Yee has fully settled-up with Nike, and divested herself of assets that were purchased even prior to her employment with Nike in order to come to a settlement. Mr. Ho and Ms. Yee have been in a committed relationship for 11 years, and have co-habitated since 2007. They are engaged to be married, have a child together, and Mr. Ho and Ms. Yee currently live with Ms. Yee's parents in San Francisco. As such, if Mr. Ho were not permitted to have contact with Ms. Yee, as a former employee of Nike, Mr. Ho would essentially become homeless and be

**DEFENDANT'S SENTENCING MEMORANDUM**                                   **PAGE 28**

removed from his family.

To the extent that special condition #4 extends to former Nike employees, the defense registers its objection to that condition.

### 11. Mercy

Mr. Ho seeks the mercy of this Court. American sentences have been characterized as particularly long, harsh, and lack an individualistic character to them; causing courts to treat offenders as less than human beings. These were the sentiments of United States Supreme Court Justice Anthony Kennedy in 2007, when he expressed these feelings to the United States Senate Judiciary Committee. See also JAMES Q. WHITMAN, HARSH JUSTICE 19, 223 n.72 (2003) ("American punishment is comparatively harsh, comparatively degrading, comparatively slow to show mercy," "the makers of sentencing guidelines succeeded only in contributing to the making of a law of punishment that shows obstinately little concern for the personhood of offenders...a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away.").

Yes Mr. Ho made some big errors, and he took shoes from Nike and sold them for profit. This was admittedly a very stupid move and one that Mr. Ho will regret for the rest of his life. However, given Mr. Ho's lack of criminalistic attitude, his prior good record, his age, and his new familial situation, the statistics show that Mr. Ho is very unlikely to reoffend. Further, given the fact that the Probation Department is recommending a below-guideline sentence, Mr. Ho seeks the mercy of this Court to sentence him appropriately, given all the facts and circumstances.

**DEFENDANT'S SENTENCING MEMORANDUM**                                  **PAGE 29**

G.    <u>CONCLUSION</u>

Mr. Ho committed a big error against one of the most powerful companies in the world. Mr. Ho not only tarnished the Nike brand, but he has tarnished himself forever. He has taken extraordinary steps to address his underlying conduct, to make good on his current and future obligations, and to better his community. Mr. Ho has no criminal history and lacks a criminalistic attitude. For many reasons, a sentence less than what is recommended by the government and the probation department is appropriate and proper in this case.

When one considers the policies enacted as part of 18 U.S.C. § 3553(a), there are more than ample grounds to impose a sentence of probation. Such is consistent with §3553(a), Mr. Ho's individual characteristics, his needs to continue to care for his fiancé and infant child, to continue his employment, to enable Mr. Ho to pay back his tax liabilities, all among a myriad of other reasons, and such a sentence promotes respect for the law. A probationary sentence adequately achieves the purposes of sentencing. Therefore, we respectfully request that the Court impose a sentence below that which is recommended by the government and Probation Department.

DATED:        Portland, Oregon
              November 04, 2015

<u>s/d Mark C. Cogan</u>
MARK C. COGAN, OSB# 92016

**DEFENDANT'S SENTENCING MEMORANDUM**                    **PAGE 30**